TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-09-00086-CV






Franklin Barnum, Appellant


v.


Michele Ngakoue, Appellee






NO. 03-09-00087-CV






Texas Adjutant General's Office, Appellant


v.


Michele Ngakoue, Appellee





FROM THE COUNTY COURT AT LAW NO. 2 OF TRAVIS COUNTY

NO. C-1-CV-08-010645, HONORABLE J. DAVID PHILLIPS, JUDGE PRESIDING





M E M O R A N D U M O P I N I O N


 Michele Ngakoue sued Franklin Barnum for injuries and damage sustained during
a car accident. At the time of the accident, Barnum was working for the Texas Adjutant General's
Office ("Adjutant General"). See Tex. Gov't Code Ann. §§ 431.021-.038 (West 2005 & Supp. 2010)
(establishing office of Adjutant General). Shortly after Ngakoue filed suit, Barnum filed a motion
to dismiss himself from the case. Ultimately, Ngakoue amended his pleadings and named the
Adjutant General as a defendant. After being named in the suit, the Adjutant General filed a plea
to the jurisdiction and motion to dismiss asserting that the suit against it and Barnum should be
dismissed. The trial court denied both Barnum's motion to dismiss and the Adjutant General's plea
and motion to dismiss, and Barnum and the Adjutant General challenge the district court's orders
on appeal. We will reverse the district court's order denying Barnum's motion to dismiss and affirm
the order denying the Adjutant General's plea and motion to dismiss. 


STATUTORY FRAMEWORK

 Before addressing the background or issues involved in this appeal, we provide a
summary of the relevant statutory framework governing this case. Under Texas law, governmental
entities are immune from suit unless the State has consented to suit. Texas Dep't of Parks & Wildlife
v. Miranda, 133 S.W.3d 217, 225 (Tex. 2004); see Texas Dep't of Transp. v. Jones, 8 S.W.3d 636,
638 (Tex. 1999) (explaining that trial courts have no subject matter jurisdiction over suits against
State in absence of State's consent). By enacting the Texas Tort Claims Act (the "Act"), the
legislature agreed to waive sovereign immunity for certain claims. See Tex. Civ. Prac. & Rem. Code
Ann. §§ 101.001-.109 (West 2005 & Supp. 2010) (containing provisions of Act); see also id.
§ 101.025 (West 2005) (waiving immunity "to the extent of liability created by" Act). The Act
establishes the circumstances in which a governmental entity may be held liable for the negligent
acts of its employees. Id. § 101.021 (West 2005). In relevant part, the Act states that a governmental
employer is liable for damages "caused by the wrongful act or omission or the negligence of an
employee acting within the scope of employment if" the damages arise "from the operation or use
of a motor-driven vehicle or motor-driven equipment." Id.; see also id. § 101.001(2) (West 2005)
(defining "employee" as "a person, including an officer or agent, who is in the paid service of a
governmental unit by competent authority, but does not include an independent contractor, an agent
or employee of an independent contractor, or a person who performs tasks the details of which the
governmental unit does not have the legal right to control").

 As a tort-reform measure, the legislature significantly revised section 101.106 of the
Act. See Act of June 2, 2003, 78th Leg., R.S., ch. 204, § 11.05, 2003 Tex. Gen. Laws 847, 886. The
new provision is entitled "Election of Remedies," and it sets out the potential consequences
stemming from a plaintiff's decision to sue a governmental employer, its employee, or both. See
Tex. Civ. Prac. & Rem. Code Ann. § 101.106 (West 2005). The provision forces plaintiffs "to
decide at the outset whether an employee acted independently and is thus solely liable, or acted
within the general scope of his or her employment such that the governmental unit is vicariously
liable." Mission Consol. Indep. Sch. Dist. v. Garcia, 253 S.W.3d 653, 657 (Tex. 2008). The purpose
of this election is to reduce the "resources that the government and its employees must use in
defending redundant litigation." Id.

 As a result of the amendment, "a plaintiff is no longer able to include every potential
tortfeasor in a suit, argue alternative theories of recovery based on the same conduct, and allow a fact
finder to decide which party was the wrongdoer." Huntsville Indep. Sch. Dist. v. Briggs, 262 S.W.3d
390, 393 (Tex. App.--Waco 2008, pet. denied). Essentially, "a plaintiff must choose whether he
would seek to impose tort liability on a governmental unit or on a governmental employee." Id. If
a plaintiff is unwise in his choice of what party to sue, he faces a potential bar to recovery from both
the employee and the governmental employer. Id. 

 The legislative intent to force a plaintiff to carefully choose whether to sue a
governmental employer or its employee is evidenced by the language of the six subsections of
section 101.106. See Tex. Civ. Prac. & Rem. Code Ann. § 101.106 (delineating effects of decision
to file suit against employee or employer and from obtaining settlement with or judgment against
employee or employer). The two subsections of 101.106 that bear upon this appeal are subsections
101.106(b) and 101.106(f). Subsection 101.106(b) governs circumstances in which a plaintiff sues
a governmental employee and provides that "[t]he filing of a suit against any employee of a
governmental unit constitutes an irrevocable election by the plaintiff and immediately and forever
bars any suit or recovery by the plaintiff against the governmental unit regarding the same subject
matter unless the governmental unit consents." Id. § 101.106(b); see id. § 101.001(3) (West 2005)
(defining "governmental unit"). Subsection 101.106(f) also governs circumstances in which a
plaintiff has elected to sue a governmental employee, but it also provides the employee with the
ability to be dismissed from the suit against him in certain circumstances. In particular, the provision
provides as follows:


If a suit is filed against an employee of a governmental unit based on conduct within
the general scope of that employee's employment and if it could have been brought
under this chapter against the governmental unit, the suit is considered to be against
the employee in the employee's official capacity only. On the employee's motion, the
suit against the employee shall be dismissed unless the plaintiff files amended
pleadings dismissing the employee and naming the governmental unit as defendant
on or before the 30th day after the date the motion is filed.



Id. § 101.106(f) (emphasis added); see also Franka v. Velasquez, No. 07-0131, 2011 Tex. LEXIS
70, at *21, 31, 33, 51 (Tex. Jan. 21, 2011) (explaining that "any tort claim against the government
is brought 'under' the Act for purposes of section 101.106, even if the Act does not waive immunity"
for tort alleged, and "that suit is brought under the Act when it is filed, not when waiver of immunity
by the Act is established"). 


BACKGROUND

 With the preceding in mind, we now turn our discussion to the events leading up to
this appeal. Ngakoue and Barnum were involved in a car accident in Austin, Texas. After the
accident, Ngakoue sued Barnum claiming that Barnum's negligence caused the accident. In response to the suit, Barnum filed a motion to dismiss the suit against him under
subsection 101.106(f), arguing that he was employed by the Adjutant General at the time of the
accident, that he was acting within the general course and scope of his employment at the time of
the accident, and that the suit could have been filed against the Adjutant General. See Tex. Civ.
Prac. & Rem. Code Ann. § 101.106(f). Approximately two weeks later, Ngakoue filed an amended
petition that also named the State and the Adjutant General as defendants. The petition was entitled
"Plaintiff's First Amended Petition & Motion to Dismiss as to Defendant Franklin Barnum." 
Several months after the amended petition was filed, the trial court denied Barnum's motion to
dismiss. 

 After Barnum's motion to dismiss was denied, the Adjutant General filed a plea to
the jurisdiction and motion to dismiss, arguing that Ngakoue's suit against the Adjutant General and
Barnum should be dismissed under subsections 101.106(b) and 101.106(f). See id. § 101.106(b),
(f). Ultimately, the trial court denied the plea and motion to dismiss. Barnum appealed the trial
court's denial of his motion to dismiss, and the Adjutant General appealed the trial court's denial of
its plea to the jurisdiction and motion to dismiss. See id. § 51.014(a)(5), (8) (West 2008) (allowing
governmental employees and employers to file interlocutory appeals in certain circumstances); see
also Reedy v. Pompa, 310 S.W.3d 112, 114 n.1 (Tex. App.--Corpus Christi 2010) (noting that
although section 51.014(a)(5) allows for interlocutory appeal of denial of employee's motion for
summary judgment alleging immunity, courts have construed that provision as allowing interlocutory
appeals "from rulings on other types of motions raising immunity issues, such as motions to
dismiss"), rev'd on other grounds, No. 10-0306, 2011 Tex. LEXIS 76, at *2 (Tex. Jan. 21, 2011). 


STANDARD OF REVIEW

 The issues raised in this appeal involve statutory construction, which is a question of
law that is reviewed de novo. See Bragg v. Edwards Aquifer Auth., 71 S.W.3d 729, 734 (Tex. 2002);
USA Waste Servs. of Houston, Inc. v. Strayhorn, 150 S.W.3d 491, 494 (Tex. App.--Austin 2004,
pet. denied). In construing a statute, we must ascertain the legislature's intent in enacting the statute. 
Fleming Foods of Tex. v. Rylander, 6 S.W.3d 278, 284 (Tex. 1999). In making this determination,
courts should look to the plain meaning of the words used in the statute. See Fireman's Fund
County Mut. Ins. Co. v. Hidi, 13 S.W.3d 767, 768-69 (Tex. 2000). We presume that every word was
deliberately chosen and that excluded words were left out on purpose. USA Waste Servs.,
150 S.W.3d at 494. When determining legislative intent, the entire act, not isolated portions, must
be considered. Jones v. Fowler, 969 S.W.2d 429, 432 (Tex. 1998). We may also consider the
"object sought to be attained" by enacting the statute and the "consequences of a particular
construction." Tex. Gov't Code Ann. § 311.023 (West 2005); see City of Austin v. Southwestern
Bell Tel. Co., 92 S.W.3d 434, 442 (Tex. 2002). 

 In addition, the Adjutant General alleges that Ngakoue's suit is barred by sovereign
immunity. A claim of sovereign immunity is properly filed in a plea to the jurisdiction because
sovereign immunity deprives a trial court of subject matter jurisdiction to consider the claim. 
Miranda, 133 S.W.3d at 225-26. A determination regarding subject matter jurisdiction and
regarding whether the facts plead "affirmatively demonstrate a trial court's subject matter
jurisdiction" are questions of law that are "reviewed de novo." Id. at 226. Similarly, a determination
regarding "whether undisputed evidence of jurisdictional facts establishes a trial court's jurisdiction
is also a question of law." Id. "If the pleadings do not contain sufficient facts to affirmatively
demonstrate the trial court's jurisdiction but do not demonstrate incurable defects in jurisdiction, the
issue is one of pleading sufficiency and the plaintiffs should be afforded the opportunity to amend." 
Id. However, if the "pleadings affirmatively negate the existence of jurisdiction, then a plea to the
jurisdiction may be granted without allowing the plaintiffs an opportunity to amend." Id. When
reviewing a plea to the jurisdiction, courts are not limited solely to looking at the pleadings and may,
instead, consider relevant evidence and "must do so when necessary to resolve the jurisdictional
issues raised." Bland Indep. Sch. Dist. v. Blue, 34 S.W.3d 547, 555 (Tex. 2000). 


DISCUSSION

 On appeal, both Barnum and the Adjutant General assert that the trial court erred by
failing to dismiss the suit against them. Regarding Barnum's motion to dismiss, they assert that
Ngakoue failed to dismiss Barnum within the thirty-day deadline identified in subsection 101.106(f). 
See Tex. Civ. Prac. & Rem. Code Ann. § 101.106(f). In light of Ngakoue's initial decision to file
suit against Barnum and in light of Ngakoue's alleged failure to properly and timely dismiss Barnum,
Barnum and the Adjutant General also contend that Ngakoue's suit against the Adjutant General "is
forever barred" under subsection 101.106(b). See id. § 101.106(b). We will address their
contentions in the order presented. 


Suit Against Barnum

 As mentioned above, Ngakoue initially filed suit against Barnum. In response,
Barnum filed a motion to dismiss himself from the suit under subsection 101.106(f). See id.
§ 101.106(f). Although Ngakoue filed amended pleadings within the thirty-day deadline listed in
subsection 101.106(f), Barnum and the Adjutant General both contend that the filing did not qualify
as a motion to dismiss Barnum because it named Barnum as a defendant in the style of the case,
referred to Barnum as a defendant, and did not explicitly request (other than in the title) that the trial
court dismiss Barnum from the case. (1) Ngakoue, on the other hand, contends that his first amended
petition is "substantially compliant" with the requirements listed in subsection 101.106(f) because
it was filed within thirty days of Barnum filing his motion to dismiss, because it named the Adjutant
General as a defendant, and because it contained a motion to dismiss Barnum. See id. 

 As a preliminary matter, we note that although Ngakoue insists that the trial court's
order denying Barnum's motion to dismiss should be upheld, he also paradoxically asserts that he
attempted to dismiss Barnum from the suit after Barnum filed his motion to dismiss. In fact,
Ngakoue contends that this Court should liberally construe his amended petition "as an abandonment
of any cause of action against Barnum." For that reason, Ngakoue also asserts that his petition
should be deemed compliant with subsection 101.106 because the filing of his amended petition was
"an obvious attempt to comply" with the statute. But, Ngakoue also contends that the trial court
correctly decided not to dismiss Barnum from the suit. In any event, we ultimately conclude that the
trial court erred by denying Barnum's motion to dismiss. 

 When determining the nature of a motion and the relief sought, courts do not look to
the motion's caption or form; on the contrary, they look to the substance of the motion. See In re
Brookshire Grocery Co., 250 S.W.3d 66, 72-73 (Tex. 2008) (concluding that motion titled "Motion
for New Trial" and that sought new trial as relief cannot be viewed as motion to modify judgment);
In re Guardianship of Archer, 203 S.W.3d 16, 23 (Tex. App.--San Antonio 2006, pet. denied)
(determining that although motions were titled pleas in abatement, substance argued that party lacked
standing and capacity); Finley v. J.C. Pace, Ltd., 4 S.W.3d 319, 320 (Tex. App.--Houston [1st Dist.]
1999, no pet.) (construing motion as motion for new trial because motion "sought to set aside the
existing judgment"). The substance of a motion is gleaned from the body of the motion and from
the "prayer for relief." Finley, 4 S.W.3d at 320. 

 As mentioned above, Ngakoue's amended petition is partially entitled as a motion
to dismiss Barnum. However, other than in the title, the petition makes no further reference to an
intention to dismiss Barnum and does not request Barnum's dismissal in the prayer for relief. 
Moreover, the style of the petition lists Barnum as a defendant, and the body repeatedly refers to
Barnum as a defendant. In particular, the following individual references to Barnum as a defendant
are found in the body:


Michele Ngakoue . . . complaining of Franklin Barnum, the State of Texas and the
Texas Adjutant General's Office, hereinafter referred to as Defendants;


. . . . 


Defendant Franklin Barnum is an individual residing in Austin, Texas;


. . . . 


A vehicle driven by Defendant Franklin Barnum . . . made an unsafe movement to
the right and struck the Plaintiff's vehicle;


. . . .


[T]he foregoing described collision was proximately caused by the negligence of the
above named Defendant Franklin Barnum in the following respects:


A. Defendant's executing an unsafe movement to the right.


B. Defendant's failure to control the speed of the vehicle.


C. Defendant's failure to keep a proper lookout.


D. Defendant's failure to take evasive action to avoid the collision.


E. Defendant's failure to make a timely application of his brakes to
avoid the collision. 


 

In addition to making individual references to Barnum as a defendant, the petition also makes several
references to "the Defendants," which, as mentioned above, was a short-hand reference to the State,
the Adjutant General, and Barnum collectively. In particular, the body of the petition states that
Ngakoue is suing "the Defendants" for damages sustained from the car accident, and the prayer for
relief provides, in relevant part, as follows: "[T]he Plaintiff prays that the Defendants be cited to
appear and answer herein, and that upon final hearing herein that the Plaintiff have judgment against
the Defendants."

 In light of the preceding, we must conclude that although Ngakoue's amended
petition is partially entitled as a motion to dismiss Barnum, the substance of the filing demonstrates
that it is not a motion to dismiss Barnum. 

 Ngakoue contends that even if he did not properly dismiss Barnum within the
statutory deadline, the trial court did not err by failing to dismiss Barnum from the suit. Essentially,
Ngakoue urges that in order to be entitled to dismissal, Barnum had to prove that he was acting in
the course and scope of his employment when the accident occurred but that he failed to meet that
burden. When Barnum filed his motion to dismiss, he attached an affidavit stating that the accident
occurred while he "was performing [his] regular duties in the course and scope of [his] employment
as a Maintenance Technician IV with" the Adjutant General and that the vehicle he was driving was
"owned by [his] employer." Although Ngakoue acknowledges the affidavit, Ngakoue insists that
Barnum failed to meet his burden because the affidavit contains no facts to support the otherwise
conclusory statements. In addition, Ngakoue asserts that the affidavit is also ineffective because the
statement regarding course and scope of employment is a legal conclusion, which Ngakoue, as a lay
witness, may not testify to. See Tex. R. Evid. 701 (outlining permissible opinion testimony for non-expert witnesses). 

 Although Ngakoue now challenges whether Barnum established that he was acting
within the course and scope of his employment, Ngakoue admitted that fact in his amended petition
and made no assertion alleging the alternative. See Houston First Am. Sav. v. Musick, 650 S.W.2d
764, 767 (Tex. 1983) (explaining that "[a]ssertions of fact, not pled in the alternative, in the live
pleadings of a party are regarded as formal judicial admissions" and that "[a]ny fact admitted is
conclusively established in the case without the introduction of . . . other evidence"). In particular,
Ngakoue asserted that the Adjutant General was not immune from suit in this case because the
accident occurred "while Franklin Barnum was acting in the course and scope of his employment
by the Texas Adjutant General's Office." (2) That admission is clear, deliberate, and unequivocal, see
Regency Advantage Ltd. P'ship v. Bingo Idea-Watauga, Inc., 936 S.W.2d 275, 278 (Tex. 1996)
(stating requirements for judicial admission in pleadings), and Ngakoue may not now challenge that
admission by asserting that Barnum failed to satisfy his burden of proving that he was acting in the
course and scope of his employment, see Mendoza v. Fidelity & Guar. Ins. Underwriters, Inc.,
606 S.W.2d 692, 694 (Tex. 1980) (explaining that judicial admission in pleading is "conclusive upon
the party making it, and it relieves the opposing party's burden of proving the admitted fact, and bars
the admitting party from disputing it"). By admitting in his petition that Barnum was acting in the
course and scope of his employment and then challenging the adequacy of Barnum's motion,
Ngakoue attempts to do exactly what the legislature explicitly abolished through its amendment to
section 101.106--plead alternative theories for recovery against a governmental employer and a
governmental employee for the same conduct. See Briggs, 262 S.W.3d at 393.

 In support of the trial court's denial of Barnum's motion to dismiss, Ngakoue also
contends that the trial court's ruling was proper because Barnum did not file any special exceptions
detailing the inadequacies in his amended petition and motion to dismiss. Specifically, Ngakoue
contends that Barnum's failure to file any special exceptions waived his right to challenge any defect
in the petition. See Tex. R. Civ. P. 90 (stating that "[e]very defect, omission or fault in a pleading
either of form or of substance, which is not specifically pointed out by exception in writing . . . shall
be deemed to have been waived by the party seeking reversal on such account"). 

 As described above, the amended petition clearly identifies who the defendants in the
case are and specifies the basis for the suit, and Barnum makes no allegation that the amended
petition did not plead a cause of action or provide fair notice of the facts in the case. See
Horizon/CMS Healthcare Corp. v. Auld, 34 S.W.3d 887, 896-97 (Tex. 2000) (specifying
requirements for pleadings). Instead of challenging a defect in the petition, Barnum asserts that
Ngakoue failed to file a motion to dismiss within the thirty-day deadline as required by subsection
101.106(f). Ngakoue has not cited any authority for the proposition that a defendant must file a
special exception to the failure to file a motion to dismiss, and we do not believe that the failure to
specially except to the absence of a statutorily-required motion to dismiss could somehow toll the
deadline by which the motion must be filed or waive the requirement altogether. 

 In addition, it is worth noting that the amended petition was filed in response to
Barnum's motion asserting that he was improperly named as a party in the suit and should be
dismissed from the suit. In other words, Barnum had already identified the defect prior to Ngakoue
filing his amended petition. Barnum's motion to dismiss also quoted the text of subsection
101.106(f), stated that Ngakoue's suit will be dismissed unless he files a motion dismissing Barnum
from the case, and warned that Ngakoue's motion to dismiss must be filed within thirty days;
however, Ngakoue did not dismiss Barnum from the suit. (3) 

 In light of Ngakoue's admission that the accident occurred in the scope of Barnum's
employment and in light of our determination that Ngakoue failed to file a motion to dismiss Barnum
within the thirty-day deadline listed in subsection 101.106(f), we must conclude that the district court
erred by denying Barnum's motion to dismiss. (4) See Tex. Civ. Prac. & Rem. Code Ann. § 101.106(f).

 For these reasons, we sustain the first issue on appeal. 


Suit Against the Adjutant General

 Having determined that the trial court erred by failing to grant Barnum's motion to
dismiss, we must now address whether the trial court erred by denying the Adjutant General's plea
to the jurisdiction and motion to dismiss. This issue necessarily turns on the resolution of what, at
least initially, appears to be conflicting statutory directives listed in subsections 101.106(b) and
101.106(f). 

 As described above, both subsections address situations in which a plaintiff has
elected to sue a governmental employee. Subsection 101.106(b) provides that the "filing of a suit"
against an employee "constitutes an irrevocable election . . . and immediately and forever bars any
suit or recovery against" the governmental employer. Id. § 101.106(b). When addressing the
meaning of this statutory provision, the appellate courts in Briggs and Texas Department of
Agriculture v. Calderon reasoned that when a plaintiff files suit against an employee, the plaintiff
makes an irrevocable choice that forever bars any suit against a governmental entity. 262 S.W.3d
at 393-94; 221 S.W.3d 918, 921 (Tex. App.--Corpus Christi 2007, no pet.), overruled on other
grounds, Franka, 2011 Tex. LEXIS 70, at *39-40 n.67. Further, the court in Briggs determined that
the "bars any suit" language chosen by the legislature in subsection 101.106(b) "operates as an
unequivocal grant of immunity to a governmental unit." 262 S.W.3d at 393-94; see Calderon,
221 S.W.3d at 921 (stating that although subsection 101.106(b) does not contain word "'immunity,'
. . . it is an immunity statute"). In other words, the courts determined that once a plaintiff sues an
employee, subsection 101.106(b) becomes effective and forever bars a governmental entity from suit. 
Briggs, 262 S.W.3d at 394; Calderon, 221 S.W.3d at 922. 

 Although the courts in Briggs and Calderon both agreed that subsection 101.106(b)
bestows permanent immunity upon a governmental employer from the moment that a plaintiff files
suit against a governmental employee, both courts agreed that the immunity is subject to removal
through subsection 101.106(f). 262 S.W.3d at 394; 221 S.W.3d at 923. As mentioned above,
subsection 101.106(f) applies to circumstances in which a plaintiff elects to sue an employee, but
it provides the employee with the option of removing himself from the suit in certain circumstances. 
Tex. Civ. Prac. & Rem. Code Ann. § 101.106(f). 

 When discussing the interplay between subsections 101.106(b) and 101.106(f), the
court in Briggs reasoned that subsection 101.106(f) may lift the otherwise permanent immunity
granted by subsection 101.106(b) if the governmental employee seeks dismissal from the suit, if the
alleged conduct occurred in the scope of the employee's employment, and if the suit could have been
brought against the employer "under the Act." 262 S.W.3d at 394. However, both courts warned
that in order to pierce the immunity bestowed by subsection 101.106(b), the plaintiff "must comply
with the procedural requirements of subsection" 101.106(f). Id.; Calderon, 221 S.W.3d at 923. 
Importantly, the plaintiff "must file an amended pleading that both dismisses the employee and
substitutes the governmental unit as the defendant within thirty days of the employee's motion to
dismiss." Briggs, 262 S.W.3d at 394; see Calderon, 221 S.W.3d at 923. Further, the Briggs court
explained that if the plaintiff does not timely file an amended pleading that dismisses the employee
and substitutes the governmental entity, then the "protections of subsection [101.106](b) do not
disappear." Briggs, 262 S.W.3d at 395. Accordingly, "the protections . . . are still available to the
governmental unit," and "a plea to the jurisdiction by the governmental unit should be sustained." 
Id. Under the interpretation adopted in Briggs and Calderon, the failure to file within the statutory
deadline amended pleadings that complied with both procedural requirements bars recovery against
the employee and the employer. 

 If we applied that analysis in the present case, we would have to conclude that the
district court should have granted the Adjutant General's plea to the jurisdiction. Ngakoue failed
to file amended pleadings that both dismissed Barnum and named the Adjutant General as a
defendant within the thirty-day deadline. Accordingly, Ngakoue failed to comply with the
requirements necessary to remove the immunity from suit bestowed on the Adjutant General by
subsection 101.106(b) when Ngakoue elected to file suit against Barnum. 

 Although the analysis undertaken in Briggs and Calderon is consistent with the
legislative intent requiring plaintiffs to carefully choose whether to sue a governmental employer or
its employee, we note that the analysis employed by those courts does not seem to give effect to all
of the statutory language in section 101.106. In particular, the construction reached by the courts in
Briggs and Calderon seems to ignore the import of the legislature's repeated emphasis in subsection
101.106(b) of barring future suits against governmental employers. As detailed above, the
legislature specified that the filing of a suit against an employee immediately, irrevocably, and
forever bars any suit against the governmental entity. Tex. Civ. Prac. & Rem. Code Ann.
§ 101.106(b). It is hard to imagine language that the legislature could have chosen that would more
strongly convey the concept of permanent immunity or emphasize the magnitude of the decision
regarding what party to sue. 

 Moreover, subsection 101.106(f) makes no reference to subsection 101.106(b) or
otherwise suggests that it is an exception to the permanent immunity established under subsection
101.106(b). Similarly, subsection 101.106(b) does not contain any language indicating that the
permanent immunity bestowed by that provision is subject to removal through subsection 101.106(f)
or any other provision for that matter. In fact, the only explicit exception to the permanent immunity
from suit bestowed by subsection 101.106(b) is found in that same subsection. Specifically, the
provision provides that even though a plaintiff filed suit against a governmental employee, the
plaintiff may file suit against the governmental employer but only if "the governmental unit
consents." Id. 

 Resolution of the directives in subsections 101.106(b) and 101.106(f) is further
compounded by the fact that the meaning of the phrase "governmental unit consents" in the context
of this statute is not entirely clear. At first glance, the use of the term "consents" would seem to
indicate that the legislature was contemplating actions establishing consent that occur after a plaintiff
files suit against an employee. Id. For example, the legislature might have been pondering situations
in which it would agree to waive immunity for a particular suit or circumstances in which the
governmental employer itself has the authority to waive immunity and agrees to waive it in a
particular case. That construction is supported by the definition of "governmental unit," which
includes entities that potentially have the authority to consent to suit. Id. § 101.001(3) (defining
"governmental unit" as including State and political subdivisions of State, including cities). 

 Although not directly confronted with determining the interplay between subsections
101.106(b) and 101.106(f), the supreme court recently hinted that the term "consents" in subsection
101.106(b) can refer to situations in which a governmental employer consents to a specific suit. See
Mission Consol., 253 S.W.3d 653. In Mission Consolidated, a plaintiff sued a school district and
a superintendent in the same suit. Id. at 654-55. When assessing whether subsection 101.106(b)
barred recovery against the school district due to the plaintiff's decision to sue a district employee
as well, the court noted that the district "itself did not consent to" the suit. Id. at 660; see also
Franka, 2011 Tex. LEXIS 70, at *30 (summarizing Mission Consolidated and noting that district
had not consented to suit). 

 This construction would give full effect to the permanent and immediate immunity
bestowed under subsection 101.106(b), but it would harshly limit the circumstances in which a
plaintiff could maintain a suit against a governmental employer after initially filing suit against an
employee. Cf. Franka, 2011 Tex. LEXIS 70, at *50 (stating that "restrictions on government
employee liability have always been part of the tradeoff for" the Tort Claims Act's "waiver of
immunity, expanding the government's own liability for its employees' conduct"). Even if the
plaintiff filed the amended pleadings specified in subsection 101.106(f) within the thirty-day
deadline, the plaintiff's suit against the employer would be subject to dismissal under subsection
101.106(b) unless the legislature or the governmental employer (if able to) consents to being sued. 
See Tex. Civ. Prac. & Rem. Code Ann. § 101.106(b). Given the unlikelihood that consent to suit
would be given after a plaintiff initially files suit against a governmental employee, a plaintiff's
election to file suit against an employee and then file amended pleadings under subsection 101.106(f)
would likely permanently extinguish a plaintiff's ability to recover against either the governmental
employer or its employee. (5) 

 Under this resolution of the directives in subsections 101.106(b) and 101.106(f), the
trial court erred by failing to grant the Adjutant General's plea to the jurisdiction. Ngakoue first filed
suit against Barnum, and neither the legislature nor the Adjutant General has agreed to allow the
subsequent suit against the Adjutant General. 

 In the absence of further guidance regarding the interplay between subsections
101.106(b) and 101.106(f), we would adopt the construction described above because it seems to
give the most effect to all of the words used in those provisions. However, in this case, we are not
limited solely to consideration of the words used in the statute because the supreme court has
provided a binding interpretation of subsection 101.106(b). Although the supreme court in Mission
Consolidated indicated that "consents" can refer to circumstances in which a governmental employer
allows itself to be sued, the court later determined that "consents" can also have a different meaning
as it is used in subsection 101.106(b). In particular, the court later determined that consent to suit
had been given because the legislature, on behalf of the district, had statutorily waived immunity for
the cause alleged against the district through the passage of the Texas Commission on Human Rights
Act. Mission Consol., 253 S.W.3d at 660; see also Tex. Lab. Code Ann. §§ 21.001-.556 (West 2006
& Supp. 2009) (containing provisions of Texas Commission on Human Rights Act). In other words,
subsection 101.106(b) did not bar a suit against the district because the legislature had previously
waived immunity and, thereby, given its consent to suit through its prior statutory waiver of
immunity. (6) 

 Under Mission Consolidated, subsection 101.106(b) simply stands for the proposition
that after initially filing suit against a governmental employee, a plaintiff may not subsequently sue
the governmental employer unless the subject matter of the suit falls under a waiver of immunity
previously enacted by the legislature. The supreme court's inclusion of prior waivers of immunity
within the meaning of the phrase "unless the governmental unit consents" ignores the legislature's
decision to use the present tense of the word "consents." See Tex. Gov't Code Ann. § 311.012(a)
(West 2005) (explaining that when construing statutes, courts should presume that "[w]ords in the
present tense include the future tense"). In addition, this construction of the term "consents" in
subsection 101.106(b) seems to eliminate any real effect to the provision because plaintiffs have
always been prohibited from suing governmental employers when immunity has not been waived. 
Stated differently, subsection 101.106(b) only bars subsequent suits against governmental employers
that were already barred through the doctrine of sovereign immunity. Accordingly, if a plaintiff first
elects to sue a governmental employee, subsection 101.106(b) does not bar the filing of a subsequent
suit against a governmental employer regarding the same subject matter if the legislature previously
waived immunity for the alleged cause or causes of action. Given the apparent recognition that a
governmental employer could itself agree to be sued in certain circumstances, the construction of
subsection 101.106(b) adopted in Mission Consolidated would also seem to authorize suits against
governmental employers for which immunity has not been statutorily waived provided that the
employer itself consents to the suit. 

 Because the construction of subsection 101.106(b) offered under Mission
Consolidated seems to authorize subsequent suits against governmental employers after a plaintiff
filed suit against an employee, the construction is inconsistent with the strong language in the
remainder of the opinion regarding the purpose of the amendment to section 101.106 as well as the
barring language found in other portions of section 101.106. Other than the portion of the opinion
seemingly authorizing subsequent suits against governmental employers, the remainder of the
discussion in Mission Consolidated regarding section 101.106 explains that when a plaintiff chooses
to file suit against an employer or an employee, he makes an irrevocable election that cannot be
undone. For example, the supreme court stated that the purpose of the revision "was to force a
plaintiff to decide at the outset whether" to sue a governmental employer or its employee, that the
provision required "a plaintiff to make an irrevocable election at the time suit is filed between suing
the governmental unit . . . or proceeding against the employee alone," and that the legislature now
forces "plaintiffs to make an irrevocable election at the time suit is filed." 253 S.W.3d at 657. 

 Similarly, the language in the other parts of section 101.106 evidence an intention to
prohibit plaintiffs from originally pursuing relief from an employer or employee and then later
substituting the other party. The mirror provision to subsection 101.106(b) forever bars the filing of
a suit against a governmental employee after the plaintiff files suit against the governmental
employer. Tex. Civ. Prac. & Rem. Code Ann. § 101.106(a). Similarly, subsections 101.106(c) and
101.106(d) forever prohibit a plaintiff from suing a governmental employee if a settlement is
obtained from the employer and also bar a plaintiff from obtaining a judgment or recovery against
a governmental employer if the plaintiff obtains a judgment against a governmental employee. Id.
§ 101.106(c), (d). Unlike the construction of subsection 101.106(b) adopted under Mission
Consolidated, the other provisions of section 101.106 impose permanent consequences to decisions
regarding whether to pursue an action against an employee or an employer. 

 Even though the construction offered in Mission Consolidated seems problematic and
inconsistent with the language of section 101.106, we are bound by that construction nonetheless. 
Accordingly, we must conclude that the district court properly denied the Adjutant General's plea
to the jurisdiction. This suit stems from a car accident between Ngakoue and one of the Adjutant
General's employees, and the legislature has expressly waived sovereign immunity in these
circumstances. See id. § 101.021(1). Thus, under Mission Consolidated, the legislature has
consented to suit in these circumstances and the "forever" bar under subsection 101.106(b) does not
apply. Cf. Bailey v. Sanders, 261 S.W.3d 153, 157 (Tex. App.--San Antonio 2008, no pet.)
(concluding that substituting governmental employer for employee was proper because claim alleged
fell under Act's waiver of immunity and noting that government conveys consent to suit through
legislation). Therefore, Ngakoue was free to file suit against the Adjutant General under subsection
101.106(b) even though he had previously filed suit against Barnum. 

 For these reasons, we overrule the second issue presented on appeal. 


CONCLUSION

 Having sustained the first issue on appeal, we reverse the district court's order
denying Barnum's motion to dismiss and render judgment dismissing the suit against Barnum. 
Further, having overruled the second issue on appeal, we affirm the district court's order denying the
Adjutant General's plea to the jurisdiction and motion to dismiss. Accordingly, we remand this case
to the trial court for further proceedings. 


 __________________________________________

 David Puryear, Justice

Before Justices Patterson, Puryear and Henson

 Justice Patterson Not Participating

CV 03-09-00086 Reversed and Rendered

CV 03-09-00087 Affirmed

Filed: April 29, 2011





 
1. Almost two months after filing an amended petition, Ngakoue filed another amended
petition. This one was entitled "Plaintiff's Second Amended Petition & Dismissal as to Defendant
Franklin Barnum." Barnum and the Adjutant General contend that Ngakoue's second amended
petition fails for the same reasons listed above and because it was filed more than thirty days after
Barnum filed his motion to dismiss. Because the second amended petition was filed well past the
thirty-day deadline mandated by subsection 101.106(f), we need not consider whether the second
amended petition could be construed as a proper motion to dismiss Barnum. See Tex. Civ. Prac.
& Rem. Code Ann. § 101.106(f) (West 2005). 
2. Ngakoue makes a similar admission in his brief when he states that Barnum was
"apparently acting in the course and scope of his employment." 
3. In another argument involving special exceptions, Ngakoue argues that the trial court's
order denying Barnum's motion to dismiss was proper because the motion failed to provided
Ngakoue with "fair notice" regarding the manner in which he "failed to comply with" section
101.106. Further, he contends that when he later filed special exceptions to Barnum's motion
highlighting the lack of fair notice, Barnum did not amend his filings. For that reason, Ngakoue
insists that the trial court's ruling on the motion should be upheld. 


 As a preliminary matter, we note that under the circumstances present in this appeal, it is not
readily apparent that failing to amend a motion to dismiss in response to the filing of special
exceptions could result in the type of waiver urged by Ngakoue. In any event, we would be unable
to conclude that the motion did not provide fair notice regarding the manner in which Ngakoue failed
to comply with section 101.106. As described above, Barnum's motion referred to and quoted
subsection 101.106(f), stated that Ngakoue filed suit against him for actions occurring "within the
course and scope of his employment," and urged that the suit against him must be dismissed under
subsection 101.106(f) unless Ngakoue "files amended pleadings dismissing the employee and
naming the governmental unit as a defendant" within thirty days. 
4. In his brief, Ngakoue asserts that the trial court properly denied Barnum's motion to
dismiss "because of variances between the pleading and proof." Essentially, Ngakoue contends that
in "Barnum's Supplemental Responses to Requests for Disclosure," Barnum named only himself and
Ngakoue as parties to the suit. In other words, Barnum failed to specify that the Adjutant General
was a potential party to the suit. For that reason, Ngakoue insists that there is a "fatal" variance
between these discovery responses and the allegations in the motion to dismiss. See Bland Indep.
Sch. Dist. v. Blue, 34 S.W.3d 547, 555 (Tex. 2000) (stating that "a court deciding a plea to the
jurisdiction is not required to look solely to the pleadings but may consider evidence and must do
so when necessary to resolve the jurisdictional issues raised"). 


 However, Barnum's response to the requests for disclosure was not included in the appellate
record. See Tex. R. App. P. 34 (explaining that appellate record consists of clerk's record and, "if
necessary to the appeal, the reporter's record"). With certain exceptions not applicable here,
"appellate courts may not consider matters outside the appellate record." Fox v. Wardy, 234 S.W.3d
30, 33 (Tex. App.--El Paso 2007, pet. dism'd w.o.j.). Further, we note that the filings by Barnum
that were included in the record repeatedly assert that the Adjutant General should have been named
in the suit and that Barnum should have been dismissed. 
5. Rather than amend his pleadings, the plaintiff could instead choose to argue that the
requirements for dismissal under subsection 101.106(f) were not satisfied. Huntsville Indep. Sch.
Dist. v. Briggs, 262 S.W.3d 390, 394-95 (Tex. App.--Waco 2008, pet. denied); see Tex. Civ. Prac.
& Rem. Code Ann. § 101.106(f). If the trial court agreed with the plaintiff, then the employee would
not be entitled to dismissal, and the plaintiff's suit against the employee could proceed. If the court
disagreed, the suit against the employee would be dismissed. 
6. It is worth noting that another possible interpretation for the word "consents" was
postulated in the dissenting opinion to a recent supreme court opinion. See Franka v. Velasquez,
No. 07-0131, 2011 Tex. LEXIS 70, at *62-63, 78-79 (Tex. Jan. 21, 2011) (Medina, J., dissenting). 
The dissent in Franka noted that the government generally consents to suit through legislation and
reasoned that subsection 101.106(f) outlines the procedure for obtaining consent to suit in cases in
which a plaintiff initially files suit against a governmental employee but then later attempts to file
suit against the governmental employer in response to the employee's motion to dismiss. Id. at *62-63. Essentially, the dissent determined that although subsection 101.106(b) would prohibit a
plaintiff from filing suit against a governmental employer after initially suing an employee unless
the employer consented to suit, the employer's consent is obtained by complying with the
requirements of subsection 101.106(f): dismissing the employee and naming the employer within
thirty days. See Tex. Civ. Prac. & Rem. Code Ann. § 101.106(f). In other words, the State, on
behalf of all governmental units, has consented to be named in suits originally filed against a
governmental employee but "that consent terminates 30 days after the filing of the employee's
motion to dismiss." Franka, 2011 Tex. LEXIS 70, at 78, 78-79 n.12.